Change Commission. Ms. Little, may it please the court, I'm Margaret Little from the New Civil Liberties Alliance, representing appellant Michelle Cochran. Michelle Cochran asked this Court to find jurisdiction. First, free enterprise fund unanimously decided the question for all of the circuits for the same claim and under the same statutory scheme. Second, Thunder Basin requires it. Faithful application of the three factors set forth in that Supreme Court decision lead to the inescapable conclusion that a removal claim is wholly collateral to agency enforcement of these securities laws. Further, the agency lacks both competence and expertise to decide removal challenges. And finally, meaningful judicial review is not possible under this scheme. The third path to jurisdiction is a textual analysis of this statute. The text and the structure of the Exchange Act, and specifically Section 78BB subsection A, preserves existing jurisdiction. And we know from free enterprise fund that nothing in the statutory scheme strips it, even implicitly. Each of these three paths leads to district court jurisdiction. I'm ready to take questions from the court. Miss Little, let me ask you about free enterprise fund. You mentioned that, and that is a key case. What route did the plaintiff in that case have to obtain judicial review other than by going to the district court under general federal question jurisdiction? Well, they could have violated one of the PCA OB rulings, but the Supreme Court said that was not necessary to do. They could have resisted the PCA OB investigation, and they would have found themselves in another judicial proceeding. The Supreme Court said in that case that hearing separation of powers challenges is so obvious for district court jurisdiction that the PCA OB plaintiffs did not have to undergo any of those hurdles. Whereas here, Michelle Cochran makes a much stronger case of aggrievement and the need to have her issue decided before the administrative proceeding proceeds. But at that exact phase in free enterprise, when they were just under investigation, you acknowledged there was no other route to judicial review because you just said they'd have to go further and incur a sanction. Right. And then the Supreme Court said, you don't have to bet the farm. We're not going to make you go through those hurdles. You said it's so obvious that a separation of powers claim can be brought in the district court. Can you name a case in which district court jurisdiction has been recognized for a plaintiff who is already embroiled in an SEC enforcement proceeding? Yes, we've cited several district court opinions in our briefing, but the plaintiffs in Hill and Gray in the 11th Circuit, plaintiffs in Duca and Gupta, and I think perhaps one or two more in the 2nd Circuit, the court found that there was jurisdiction to hear those claims. But all those were reversed by the circuits. They were, and I'd be happy to talk to you about the Let me ask you about the circuit's jurisprudence. Is your argument such that we would implicitly be finding that each of those circuits was wrong? Yes. And let me ask you about... Except for one. I'm sorry. Except for jurisdiction. Okay. Most of them. However, we count them up. What should we make of the latest opportunity for the Supreme Court to straighten this out, which was the denial of cert 10 days ago in the more recent 11th Circuit case of Gibson. I think you or your association was on that petition. Were you making the same arguments to the Supreme Court in that petition that you're making to us? We do make the same arguments there, but as everyone here knows, the denial of cert could mean anything, including that they are waiting for a circuit split, which we are actively working on in the circuit today. We're aware of that, of your efforts. Ms. Little, what is your argument that jarcossy is not wrong or distinguishable? It's distinguishable because jarcossy made no separation of powers claims, either appointments or removal. The court there said it was a mine run objection to the proceeding, didn't it? It did. Yes. But jarcossy, it was a different type of claim brought, but it did directly address free enterprise and say that free enterprise does not apply when you're embroiled in an enforcement proceeding. Isn't that the way the D.C. Circuit saw it? Yes, but it was not considering a separation of powers appointments or removal claim when it made that decision. Let me ask you about Thunder Basin. When they're considering whether agencies within their jurisdiction, the court itself doesn't seem as concerned, certainly as you are urging upon us, the rule of agencies are not generally proper place for adjudication of constitutional claims. That rule is not mandatory, the court said, and it's perhaps of less consequence. And then it sets out some reasons why it may be of less consequence in certain situations, and maybe that particular example doesn't fit here well. It seems to me that what we have in these other circuits is a situation in which the courts are concluding that because this issue ultimately can be considered after enforcement has begun, even if enforcement doesn't proceed all the way to a final conclusion, which goes to a circuit court of appeals, it is still not the be-all, end-all that is a constitutional claim. And elegance says what it says. So help me understand why it is so significant to you that even though this is no longer a pre-enforcement case, this is not a pre-enforcement case, that the rest of Thunder Basin's analysis isn't equally applicable here to say that this constitutional claim can wait, can initially be decided, I guess you would accept, in the agency can be decided, but then ultimately will be reviewed. Pre-enforcement is a very large exception. Going into district court very much is the exception and not the rule. What is so significant about this that caused us to apply Thunder Basin in the way that you're saying? Well, there are two ways you can look at this. One is what we have in our case that distinguishes it both from Elgin and Thunder Basin is that if we prevail on our claim, the proceeding for Michelle Cochran, the third proceeding will be set aside altogether, necessitating yet an additional proceeding. That was not present in either Thunder Basin, or in Elgin. In fact, in Thunder Basin, they specifically say that they are not contesting the scheme itself. It was simply a due process claim having to do with the Mine Act. And in Thunder Basin, the court said this was at bottom, essentially a Mine Act case regarding posting notices at the mine, something that the agency had a lot of expertise and had recently ruled upon. So the nature of the claim is greatly different here where in free enterprise fund, the court says agencies lack competence to consider structural constitutional claims. Same holds true for Elgin. In Elgin, that was an employment dismissal claim that was routinely dealt with in the administrative proceeding. Again, in Elgin, no one was challenging the constitutionality of the adjudicator in that proceeding, which differentiates it greatly. And they felt that, correctly so, that there were preliminary issues such as had there even been a constructive discharge that should be decided in the first instance. And you can also distinguish them by looking at purposes that Congress could have had in mind. In the Thunder Basin case, the court considered legislative history that showed that Congress was thinking about channeling these claims so that they could be handled expeditiously and they wanted to channel them there and not clog up the courts with those. Same holds true for the Civil Surface Reform Act in Elgin. Again, the Congress made a decision that employment claims should be channeled through this specific scheme. There's no such thing that can be said about the SEC statute. There's nothing in the legislative history, either the early history of the Exchange Act or the Dodd-Frank Amendments to it, this is anything about wanting to channel claims, especially claims that have nothing to do with securities laws, through an administrative proceeding. And it makes no sense to do so because they don't have the competence to decide those questions. Also, if you take a look at the structure of the various statutes. In Thunder Basin, the way that the statute was structured made it clear that mine act regulatory claims would go through the administrative proceeding. In, by contrast, in the Exchange Act, it's very clear that the scheme was set up by Congress with a proviso that nothing in that scheme should strip district courts of otherwise existing jurisdiction. Ms. Little, can I ask you about the enforcement investigation distinction that seems to be so integral to the way that other courts of appeals have resolved this case? If I understand the distinction, the theory seems to be that once you're embroiled in an enforcement proceeding, you don't have to so-called bet the farm in order to get to a final and reviewable decision. But the thing I don't understand about it is if you think about enforcement proceedings, the most robust enforcement proceeding I can possibly imagine would be a criminal trial, where the government is prosecuting someone criminally. And of course, there's a very appeal of any sorts of claim. But the exception to that, that is an old and established one, is that you always get review, no matter what the government is enforcing, with respect to the claim that this tribunal doesn't have the right to try me. That's why, for example, you get an interlocutory appeal of a claim that this violates the double jeopardy clause. And in fact, I can't think of any circumstance where you don't get some article three tribunal to review the question of whether this court has the ability to try me or this judge or this tribunal, for whatever reason, sovereign immunity, the speech or debate clause, the double jeopardy clause, et cetera. Can you think of an area of law where we make someone go through an allegedly unconstitutional proceeding? And I don't mean that there's constitutional violations committed in the proceeding, I mean that the existence and the constitution of the tribunal itself is violative, and we make you wait until it's concluded to get a review of it. The only instances I can think of are the five errant SEC ALJ cases, and perhaps the case Axon in the Ninth Circuit, where they seem to be deaf to the important points you make, which is the judicial review has to occur, and all that happens in this situation is there is the minuscule possible maybe opportunity for judicial review after your constitutional rights have been violated, and that cannot be meaningful by definition. Isn't it unusual to challenge the tribunal on the basis that the tribunal is not just incompetent, or precisely the reasons that the framers were concerned about? It is unusual, and it's about time to do that. These are hugely important questions, they go to the integrity of the separation of powers, and it's important to hear them before people's constitutional rights are violated by the conduct of the proceeding, which would have to be, and we know this now, because of the Lucia decision. The SEC had not bothered to properly appoint its administrative law judges in Lucia, and they persisted in that position long after it became apparent that there was a problem, and what the Lucia decision at the Supreme Court tells us is when you have violated the separation of powers, your remedy is vacatur of the whole proceeding, and you have to go back and start over again. If people did not understand that before Lucia, they certainly should now, and forcing Michelle Cochran to go through another unconstitutional administrative law proceeding violates that principle, it violates concepts of judicial efficiency, and furthermore, the SEC has they can bring them in district court, they can also try the cases themselves, as was twice suggested in the Lucia decision. Ms. Little, I have three questions. One, are you endorsing but distinguishing our Bank of Louisiana case, or would you advise that we wrongly decided it? That's the first question. The other two have to do with your proposed rule of law. Would you agree with the SEC's opposite to your Gibson case that the FTC exclusivity regime is materially identical to this one? So, if you were to prevail, it would apply to the FTC review regime. And the last question is, is your rule of law limited to structural constitutional claims, not, for example, the due process constitutional claims? Those are my three questions. Okay, I'll try to remember them. You may have to remind me. On the first point, we do not say that the court would need to overrule Bank of Louisiana. Bank of Louisiana had an express jurisdiction stripping provision. It said no court shall have jurisdiction by injunction or any other means to interfere with these proceedings. Okay. So, we don't think that that case was wrongly decided. The second question is... It was having to do with the FTC and the opposite of Gibson says, yeah. Well, I can say this much. There's some similarities between the FTC statute and there's some differences. That has not been briefed to the court in this case. And so, there's no examination of the structure of the FTC Act. And so, I think that decision has to await another day when there's a case right for consideration before whatever district or circuit court has to entertain such a claim. And the last question... The last question was, is your proposed rule of law, the one you're urging us to adopt, limited to structural constitutional claims? Therefore, not, for example, the due process claims that were in this case? Well, again, we didn't get into the briefing on that. We are not abandoning our position that the due process claim could be heard by the court. And that's because it has to do with whether or not the SEC has to conform to its own deadlines under a case called McCarty. There is no need for any fact-finding for the court to consider that question. A court might come out differently on one claim rather than the structural constitutional claim, but we are not abandoning that claim because no additional facts are needed to decide it. Ms. Little, a few minutes ago, you were discussing Lucia. Doesn't that case show that there is meaningful judicial review for separation of powers claims after the enforcement proceeding when you go directly to the Court of Appeals? Because that's exactly how that case got to the Supreme Court. And as you said, the Supreme Court vacated the decision the ALJ had reached against Lucia. The New Civil Liberties Alliance represented Ray Lucia on remand. And we know what his journey to the Supreme Court involved. It took everything. He incurred over a million dollars in legal fees. He endured, at that time it was a seven-year, before it settled, a seven-year proceeding. He had to go all the way to the U.S. Supreme Court to vindicate his right to be heard by properly appointed SEC administrative law judges. And what is his reward for that? The pyrrhic victory of having to start all over again before a new administrative law judge some six years after the events that he was charged with. Witnesses became unavailable. There were serious impaired memories in terms of defending him. And Ray, by that time, was 70 years old and just threw in the towel. And we are asking that Michelle not be put through that process again. This court wisely issued an injunction to freeze her proceedings pending review of this jurisdictional question. And we maintain that is the correct course, the constitutional course, and also, for reasons of policy, the best course. I understand it can be time-consuming and expensive, as unfortunately a lot of litigation is, to go through the route Congress set forth of going to the Court of Appeals after the case. But what case law says that a judicial review isn't meaningful because it takes time and money and everything else? I would start with Celia Law, which says this is a here and now injury. Second of all, it can't be meaningful review because you can't unwind the clock. Elrod and other Supreme Court cases hold that deprivation of constitutional rights, even for a minimal amount of time, is impermissible. Third of all, the result will be a third hearing. I'm unaware of any court decision that requires someone to go through multiple, predictable, serious serial proceedings and consider that to be something government has a right to expect of them. Fourth, Michelle Cochran, if any penalties are assessed against her, they are routinely not stayed and she will have to pay out of pocket. Her penalties, plus her reputation and ability to engage in her chosen profession, are impaired for years upon years. And documents, and in Michelle's case, documents are unavailable for her defense, and witnesses have impaired memory. So those, all of those considerations show why this is not meaningful judicial review. Miss Little, is there, do you believe that there is any basis for saying that the Elgin case description of the Thunder Basin factors materially differed from or watered down the free enterprise discussion? I think that's a fair assessment. I think that Elgin was also a case-specific decision in a statutorily specific regime as well. What I'm saying is, did it alter the factors insofar as we are to assess them here, or was it as more of a case-specific application? Yeah, correct. It did not alter the factors in Thunder Basin, and that is clear. The Supreme Court does not sub silentio, change its mind about the law without saying so. It just applied them in the specific factual claim situation of the dismissals in Elgin under a regime that had been set up to look at employment claims in the first instance. Going back to JARCSI, there may be some concern that you have now, Justice Kavanaugh, on the JARCSI panel and also on the free enterprise original panel in the DC circuit. Are his opinions, are his evident views, his concurrence and so on reconcilable? I think they need refinement, and that's what we would seek with this court's help and on any additional review as well. But JARCSI presents a different question than what we are bringing. First of all, we do not represent Mr. JARCSI in the proceeding at the Fifth Circuit. The important structural constitutional question that's raised by us that is distinct from that raised from Mr. JARCSI is which branch of government gets to decide the separation of powers claim and when such claims should be resolved. Mr. JARCSI, as we all know from reading his opinion, has already suffered through seven years of administrative proceeding. Mr. Bandemir, seven years. Those are pretty drastic situations, and they call for judicial reassessment of whether courts need to intervene to protect the constitutional rights of Americans to be tried only once before an adjudicator that is constitutional. I think that concludes your time. You've saved some time for rebuttal. Thank you. Thank you. Mr. Aguilar. May it please the court, Daniel Aguilar for the federal defendants. The Exchange Act provides a statutory scheme for channeling claims to the courts of appeals, and I don't think that there's any serious dispute about that. If you have a claim that you don't think that the commission's decision is based on substantial evidence, or that the enforcement proceeding doesn't comply with due process, or that the ALJ needed to be appointed consistent with the appointments clause, that you can and should raise those kind of claims through the Exchange Act to the courts of appeals. And similarly, I don't think there's any question that removal challenges can and have been raised through that scheme. It's exactly what we were where Mr. Jarkizy raised and preserved a removal challenge to the ALJ in his administrative proceeding. And so from that, I think there are three propositions that we can generally agree upon. The first is that district courts generally don't have jurisdiction to entertain challenges to pending SEC proceedings. If somebody wants to go to district court and get a declaratory judgment that they didn't violate the securities laws, while there's a pending SEC enforcement proceeding to determine that, the district court would lack jurisdiction. And similarly, if somebody says, my proceeding, as it currently is going, violates due process, or violates my Seventh Amendment right to a jury trial, the district court wouldn't have jurisdiction to entertain that kind of a challenge, because that's a challenge to the proceeding that can be raised and preserved through the Exchange Act. Similarly, we know that constitutional claims can be channeled, just like they were in the Appointments Clause context for Ray Lucia, or for the Appointments Clause context in the Tenth Circuit for Mr. Vandermeer. And the third proposition that I think we agree on is that you don't have to gin up an artificial challenge just to subject yourself to the Exchange Act's review provisions. And that's what the decision in Free Enterprise stands for, where you weren't in an enforcement proceeding, they didn't have to challenge a board rule at random, and not every board action would culminate in a commission decision that could be reviewed under the Exchange Act. So applying those propositions here, it's clear that the removal challenge can be addressed within the agency. Plaintiff has asked for the agency to assign this matter to an individual commissioner, and she says that that is an appropriate remedy for her claim, and that would have remedied her alleged injury. Under all of the Thunder Basin factors, she can receive meaningful judiciary view in the Courts of Appeals. As this court stated in Bank of Louisiana, that factor is generally satisfied when the statutory scheme vests judicial review in a Court of Appeals that can decide the issues raised. And that's clearly true here. The second is that it's not wholly collateral. If somebody were to try to, for example, raise a breach of contract claim with the SEC, or have an employment, you know, I was an employee of the SEC, and you discriminated against me or took unlawful action against me, those are wholly collateral claims to the Exchange Act. They aren't meant to be reviewed within it. But here her claim is that a person assigned to an evidentiary hearing in the administrative proceeding that will result in a commission decision that Congress has said is which the Supreme Court in Elgin, in this court in Bank of Louisiana, reiterated that that means the agency can decide threshold questions such as, did you violate the securities laws? Are you liable? Or on plaintiff's due process claim, was this proceeding timely initiated? And resolution of those threshold questions in plaintiff's favor can bring agency expertise to bear on the case in the constitutional claim. That's exactly what Elgin held, even assuming that the agency couldn't decide the merits of the constitutional claim. Plaintiff's arguments against this conclusion are essentially in two main columns. The first is that she says she can't get meaningful judicial review, as we heard, because these proceedings take a very long time and because she will be forced to participate in a proceeding where she thinks that the adjudicator will have some unlawful aspect to them, that the proceeding won't be constitutional or lawful. That's essentially the exact same claim that the Supreme Court rejected in Standard Oil, where the court said, you're right, this is going to require an administrative proceeding that you say was unlawfully initiated. And that kind of claim does not give you irreparable injury. Time and expense of litigation are not irreparable injury that grant you district court jurisdiction. And similarly, a claim that the proceeding is unconstitutional would similarly be true for any kind of a due process claim or a more structural claim, such as a Seventh Amendment right to a jury trial seeking an immediate injunction of the administrative proceeding. Her second column of arguments is that separation of powers proceedings are essentially different, and that's incorrect. Appointments clause claims are a separation of powers claim. They're a claim that somebody is exercising the executive power of the United without a proper method of appointment and control by the president. But we know that that kind of claim can and has been channeled to the courts of appeals, where the litigants who raised and preserved it can and have received meaningful judicial review and a vacatur and a remand on those grounds. So to the extent her claim is that removal challenges are different, it's hard to understand why. As the Supreme Court explained in Elgin, there's no clear distinction between facial and as-applied challenges for purposes of channeling claims to the courts of appeals under Thunder Basin. And the claim that something is structural, as the Supreme Court said in Weaver, isn't of talismanic significance. This court's recognized that other courts have declared due process claims to be structural. The appointments clause claim itself is still structural, yet it can be challenged as well. At bottom, plaintiff is arguing for is that raising a separation of powers claim or removal claim will always be able to get district court jurisdiction, no matter that she's already raised that in the enforcement proceeding, and no matter that she's already asked the agency to grant her relief on that ground. That kind of a categorical argument has widespread implications. As we've said, anyone who is in an enforcement or administrative proceeding before an ALJ could bring a similar district court challenge based on this removal statute, or any alien in removal proceedings could bring a similar separation of powers challenge to the removal protections for immigration judges or BIA members, or anybody in an administrative proceeding before a multi-member agency, like the FTC or the NLRB, could bring a district court challenge to channel those members' removal restrictions. The reason we haven't seen scores of such district court challenges is because there's no basis for them. The Supreme Court in Thunder Basin and Elgin explained that those kind of challenges to the enforcement proceedings are generally going to be channeled to the courts of appeals, even when they involve constitutional matters. And that's what every court of appeals to consider this question has held since then, and it's what this court held both in Bank of Louisiana and the panel decision here. I welcome the court's questions. Mr. Aguilar, good morning. I have two questions about the Thunder Basin factors. I'm looking at Free Enterprise Fund where the court says we presume Congress does not intend to limit jurisdiction if, and then it runs through the Thunder Basin factors. So my first question is, are the Thunder Basin factors guideposts to figuring out Congress's implicit intent? And I believe the Jarkizi case said that they just view them as guideposts. They're not a sort of hard and fast test that you have to run through every single one of them to find implicit preclusion or the opposite. So that's question one. The second one is, as I read Free Enterprise Fund, you've already lost on two of the Thunder Basin factors. I read that decision as precluding the idea that the agency has expertise over this kind of constitutional claim because it's structural. And I also read Free Enterprise Fund as precluding the idea that this is anything other than collateral. I mean, I read Free Enterprise Fund as deciding those questions already and leaving to us the only open question, which is whether there's meaningful judicial review. And I can see that there's a slightly different procedural posture to this case. But I mean, do you disagree with that? Because I mean, you've talked about Bank of Louisiana, and I wrote that, so I remember that case. You've talked about Elgin. Great. But Elgin doesn't overrule Free Enterprise Fund. So, I mean, I'd like your view on whether Free Enterprise Fund doesn't already put you behind the eight ball by making two of those three guideposts against your position. Sure. We don't believe it does. And so let me sort of explain why. We don't also think that Free Enterprise Fund or Elgin are inconsistent with each other. They work together in tandem. So on the agency expertise question, Your Honor, there, the plaintiffs in Free Enterprise weren't in an enforcement proceeding. There were no other threshold grounds for which the commission could rule in their favor, hypothetically, right? That's the factor that Elgin identified. If the agency can resolve the issue in your favor on other grounds, non-constitutional grounds, that's bringing agency expertise to bear. Since that wasn't available in Free Enterprise, the court explained, well, then the particular question there of removal isn't something that the agency can address. It can't bring its expertise to bear on the question. And then on the wholly collateral front, it is wholly collateral because, as the court explained, there's no way to get into the Exchange Act review scheme unless the plaintiffs there take some further voluntary action, incur a sanction, or challenge a board rule at random. And that's why they said that's not the kind of meaningful judicial review we're thinking of. But what this court said, you know, in Bank of Louisiana, and I think what the Second and Seventh Circuits have said as well, is the Thunder Basin factors are guidance. They tend to get together all of the factors which you might think are applicable to this channeling question. But the most important of those is whether or not there's meaningful judicial review. And what the court itself said in Thunder Basin was there's not going to be what a court can do on judicial review. And it particularly pointed to claims in the VA context, where the claim was, I'm entitled to veterans' benefits. That was channeled to the agency. And then a statute that existed at the time said, the courts are not permitted to review the agency's applications of law in this area. And that's what Thunder Basin said is that doesn't qualify as meaningful judicial review. But generally, the courts of appeals and what constitutional claim can be addressed in an Article III court, the Federal Circuit, here at the D.C. Circuit, or this court. Here's what I don't understand about your meaningful judicial review argument. We could live in a world, we could, where sovereign immunity is addressed after trial, right, that the state can preserve it and it can be reviewed on appeal as a ground for reversal. And it would be an incredibly meaningful judicial review because unlike Ms. Cochran and Ray Lucia and all these other people we've talked about this morning, if the state prevailed on the sovereign immunity defense on appeal, they wouldn't have to go back and have a second trial in front of a second tribunal because they would be immune. But we don't live in that world because the courts have said uniformly for centuries that that's not meaningful because it offends the sovereignty of the sovereign, right. And so simply saying that the review, the claim can eventually be reviewed doesn't make it meaningful. It simply begs the question of whether in fact it's meaningful. And when you look around at the other areas where people have raised claims about this tribunal is incompetent to try me, as far as I can tell, and please tell me if you disagree, I can't find a circumstance where we make that particular claim wait until the end of the proceeding. So I think there is a fundamental difference between your question and the posture of the constitutional authority to initiate an administrative proceeding here. The question that Ms. Cochran raises is not even that it's ultra vires to assign that proceeding to an ALJ, right. The Administrative Procedure Act says you can assign these formal hearings to an ALJ. The question is whether the ALJ's removal protections would violate the separation of powers. Now that's a kind of claim that doesn't go to her right to be tried or her right to be at all. It's a separation of powers claim, which I take, you know, is of serious consequence that the executive branch is no shirking violet about raising these objections. But to your earlier question about, you know, you would think of a criminal trial as being perhaps the foremost of this. That's true. But we require, for example, if you're saying this doesn't comply with the speedy trial provisions, or there was prosecutorial misconduct in the grand jury proceedings or a considered report. Those are claims that you raise at the end of a trial. And to your question of, is there any other circumstance where we make you wait till the end if there's, if the claim goes to the adjudicator's authority to decide this case? The closest case I can think of is Wynn versus United States, where there it was an Article IV judge who sat on the Ninth Circuit. And there the plaintiff raised that after receiving an adverse decision to the Supreme Court. And the had your appeal adjudicated before someone who wasn't an Article III judge and had no ability to actually sit on that panel, we can review and receive your claim after the fact, even though you didn't object at the time to showing that you can get meaningful judicial review by a remand to a properly composed panel of the Ninth Circuit. Wynn certainly doesn't say that you can't mandamus that or get some sort of pre finality, I guess, is the best way of thinking about it review. Right. And we agree, if you think that there needs to be immediate judicial review right now, the district court doesn't get jurisdiction, this court would, and the proper vehicle for that would be mandamus. And how does that not, the thing I appreciate you bringing up, because I didn't, I read this part of your brief with great earnest. If you give up the idea that the Article III tribunals can intervene in SEC proceedings through mandamus, I don't understand how you can hold the same arguments that you're making about, oh, this is going to be inefficient, everyone's going to be able to do it, it's going to apply to the FTC Act, all of those things would apply with equal force and mandamus, right? Well, mandamus is not a basis for jurisdiction. And there's that too. Well, so under, what we've generally agreed on is under the DC Circuit's track analysis, which I think this court has at least sometimes cited favorably as have other circuits, is when the statutory scheme vests jurisdiction in the courts of appeals, then mandamus is appropriate in the courts of appeals because it's an exercise in aid of jurisdiction. But to the point about deficiency considerations, we think that those generally drive, underlie the reason why you think Congress is channeling these claims to the courts of appeals. It's not that, oh, it's, let me put it this way, the considerations of what's best, most efficient for resolving these claims is one that Congress made in setting up this scheme. So it's not that district court jurisdiction is better than court of appeals jurisdiction, it is applying the statutory scheme and figuring that out. So we agree, like, they could bring this claim in mandamus. Would you succeed on mandamus is a separate question, but jurisdictionally, that would be the appropriate path because otherwise you would have a series of claims where there would be district court jurisdiction over separation of powers challenges to ALJs, immigration judges, and all these other matters, which is something that you can clearly tell Congress would not have intended to have scores of suits among the district courts, potentially joining those kinds of administrative proceedings. You know, your parade of horribles, your parade of horribles makes no sense to me in as much as the Thunder Basin factors have to apply on a briefing to determine the scope of ALJ cases to which this would apply. So I don't credit that. I also wonder, does this jurisdiction is this a free, is this sort of a freestanding challenge, or does the SEC actually think that there would be defenses to asking an ALJ to determine that his or her appointment is unconstitutional? Are there defenses to the double layer of forecast protection that make this argument significant? So taking that question first, Your Honor, just so that I can make sure that I respond to it. Yes, we've laid out the reasons why the statutory removal restrictions in 7521 can and must be constitutionally construed. And we've addressed that in the DC Circuit case of Fleming versus Department of Agriculture, which we cited in a brief. And when the Jarkizy petitioner comes to this court and presents their argument on removal, we will respond on the merits of that case. And just to note, Karen Cook is the attorney who both filed this complaint for Ms. Cochran in this report and appeared on the briefs earlier in this, and she also represents Mr. Jarkizy. On your earlier, I'm sorry, Your Honor, I couldn't remember your earlier question that we have to analyze the specific statutory schemes. Yes, we agree with that. Almost all of the statutory schemes are going to say something along the lines of what the Exchange Act, what the Hobbs Act and other acts should do when they vest jurisdiction in the courts of appeals. They say, if you have an adverse order, you appeal that to the courts of appeals by filing a petition. They generally don't tend to have the, no other court will have jurisdiction to enjoin any of this, which is what the FDIC scheme had in Bank of Louisiana. That's fairly unusual. So to the a categorical argument that, you know, we look at the scheme as a whole and determine, yes, this is a channeling scheme, which is what the first part of Thunder Basin is, then their claim is, regardless of whether that is a channeling scheme or not, separations of powers claims are not susceptible to the Thunder Basin factors and will always give rise to disreport jurisdiction. So yes, we are extremely concerned that a categorical adoption of plaintiff's position will lead to the ability of anyone in an enforcement proceeding to bring a separation of powers challenge and disreport. Moreover, it's hard to understand how that's limited to separations of powers challenges. A claim that the proceedings will violate due process because I don't have adequate discovery rights or that this will violate my Seventh Amendment right to a jury trial are equally constitutional claims that you would imagine the same argument for irreparable injury would have and that the district courts need jurisdiction under 1331 to address that claim in the first instance. You don't think courts are capable of distinguishing the arguments made in pleadings for that purpose as the Supreme Court itself did in the Minack case or in Elgin or in several of these other cases that do not involve separation of powers. Separation of powers is separation of powers. And that's why it's wholly collateral as the Supreme Court said in Free Enterprise. So two responses to that, Your Honor. It's wholly collateral when there's no enforcement proceeding. They're challenging the existence of and the ability of the board to regulate them at all. Here, the only reason Ms. Cochran can raise the separation of powers challenge to the ALJ is because she is in an enforcement proceeding where an ALJ has been signed. It's hard to understand how that's wholly collateral to the exchange actually views provisions for those kinds of enforcement proceedings. But similarly, it's not clear to me whether her claim is that separation of powers claims are structural nature of the claim. And similarly, structural claims can be construed in a number of different ways. I think this court identified that the Fourth Circuit considers some due process claims to be structural as well. And that can equally apply to an idea like the Equal Protection or the Seventh Amendment or a non-delegation doctrine, which is what the Third Circuit held in the case we cited written by then Judge Alito, that even a non-delegation claim that the needs to be channeled under the immigration scheme to the courts of appeals, not the district court. Counsel, at this point, to what extent are you relying on our Bank of Louisiana opinion to support your argument? And if you are, can you respond to your opponent's distinguishing of that case? Sure. So Bank of Louisiana, as I understand it, had two consistent and I can't remember whether it's I or H2, said that no court has jurisdiction to enjoin these kind of enforcement proceedings. And the court said that would be sufficient to stop there. And then in a footnote, but we don't need to rest on that holding or exactly understand how expansive that judicial bar is because... So that first point, didn't the bank concede that? That wasn't that issue entirely, was it? I think the bank may have conceded it, yes. And then the court went on, as I understand it, over the next, I think it's six pages to say, we can apply Thunder Basin channeling here. We understand all of these other courts of appeals to have held this area. We find these decisions helpful. And then let's explain that you can receive meaningful judicial review over your challenges to this pending enforcement proceeding, that it's not wholly collateral because it's the vehicle by which you seek to overturn an adverse decision against you. And then finally, the agency can bring its expertise to bear. And there I noted that there was a separation of powers challenge to the ALJ, but said, nevertheless, the agency can decide threshold alternative questions such as whether the bank's liable at all. And all this goes to show that the claim is properly brought in the court of appeals. Mr. Aguilar, the SEC's view seems to be that free enterprise fund is limited only to PCAOB investigations. And that strikes me as a pretty radically restrictive reading of that case. And am I mischaracterizing the commission's view of free enterprise fund? I think that we're not limiting it just to PCAOB proceedings. I mean, we've described it in those terms because that's the posture of the case. But for example, as I mentioned, if somebody says, I was an SEC employee and the agency unlawfully fired me, or I had a contract to supply services with the SEC and they unlawfully terminated that contract, or someone at the SEC has courted me, all of those claims would fall outside of the Exchange Act for the reasons that the court explained. They would be wholly collateral. The agency wouldn't have its expertise to bear on it. But for the category of challenges where it is, I want to challenge regulation that the SEC is going to promulgate. I don't think that, and I've seen this challenge in the FDA context, I don't think the person who signed the rule is properly appointed, or I think that their civil service protections are unconstitutional, or a similar challenge in the enforcement context, which is what we have here. That is a challenge to the promulgation of a rule or the SEC's final decision or order. And that is something that the Exchange Act does apply to. And I don't read the court's opinion in free enterprise as categorically saying for those kinds of challenges to forthcoming SEC orders or rules that you don't have to follow the Exchange Act's channeling scheme. And again, here, we're reiterating, nobody's disputing that she is going to get judicial review of her claims de novo, that this court can address the merits of the constitutional claim. And that's exactly what's presented in the Tracheza case, for this court can decide the merits. The only issue here is about district court jurisdiction. Can I ask a follow-up to Judge Willett's question? I do understand, though, that the SEC's position is that as to this kind of separation of powers claim, as to the ALJ, she obviously could not have brought it during the investigation phase, as you understand the free enterprise case to authorize it for PCAOB because the ALJ had not been appointed yet. And then after the enforcement proceeding begins and the ALJ is assigned to her case, then she can't bring it because she's barred by 78Y. So she never gets review under free enterprise of this claim. That's the position, right? Well, I think that's the second part you're right is for the channeling purposes. The first part, I think, falls less into channeling and more into what this court was discussing in energy transfer partners in total gas, which is ripens. If you have a challenge to the agency as a whole before there's an enforcement proceeding, before one's going to be imminently forthcoming, the reinforcement challenge of Thunder Basin, then you can raise that kind of claim. I think that's what free enterprise stands for. But to raise a kind of challenge to the ALJ on separation of powers grounds, like one, you might have standing issues because they don't understand what the fairly fiscal harm to the ALJ would be. Well, just more fundamentally with this court said, in total gas, is that that kind of an appointments clause challenge or other challenge to the ALJ would rest on a series of contingencies, you'd have to wait until there's a final order against you. And then once that's there, then it's right. And then we can review it at that point. Council, can you go through the how the equal protection claim works in the Seventh Amendment and how what how you believe that that plays out? Sure. So do you mean the the equal protection in some of the amendment claims that other that other plans have raised? Yes, the amici talk about that. Because it's a unilateral right to shop. And rather than just a statutory scheme that says all claims go to the agency, that that there's an equal protection overlay to the Seventh Amendment claim. Right. And so that's very similar to what the Supreme Court addressed in Thunder Basin, where the Mine Act statutory scheme vested in the Secretary of Labor the authority to choose whether to bring an enforcement action in district court or in an enforcement proceeding. And there, the court said that goes to show that Congress wanted to give the agency the choice of where to bring the suit, not to allow the respondent in such a proceeding to choose whether to continue to engage in that enforcement proceeding or to bring a district court action. And just just to clarify one thing, one of the parts of this enforcement action is to determine whether Miss Cochran can continue to practice before the commission as as a certified accountant. And that is something that can only be done in an in an enforcement proceeding. It's not something that can be brought into support. So you're saying the review after the fact is what would be provided for and that that would be satisfactory under the Supreme Court precedent? Yes, as the Supreme Court said in Elgin, as this court said in Bank of Louisiana, and I think as most other courts of appeals have recognized, when the Court of Appeals has the ability after a proceeding to say there's been a constitutional or statutory or other violation here, we reverse, we vacate, we remand, that that's exactly the kind of meaningful judicial review that's of most important concern when determining whether these kind of claims ought to be channeled under Thunder Basin. And it's for that reason and all the other reasons we've explained here, why this court should hold that there's no district court jurisdiction over these kind of claims. And if the court is concerned about the merits, it could have considered that on the mandamus action and Miss Cochran brought it and it will have the opportunity to consider it in the Jorkese case. Chief Judge Owen, may I ask one question? You were asked and it concerns me that there hasn't much been much briefing on materially identical exclusivity or backstopping statutes. Is there any scholarship you would point to or any briefing or any other circuit decision that explores more what other identical review regimes would be implicated if we were to disagree with the other circuits? I don't think that there's, and I could be wrong about this, I can't off the top of my head think much scholarship on the very similar points, primarily because most of these claims do get channeled to the courts of appeals. But if the court is interested in similar statutory schemes, we've cited a number in our brief where the statutory scheme bests the judicial review in the courts of appeals. Those are examples and we know others under the Hobbs Act and under other similar statutes that just say, once you've had an adverse order, you go to the court of appeals. And that's generally been understood to create this kind of channeling scheme as Judge Alito explained in his Third Circuit opinion. Thank you. Ms. Trask, would you add two minutes to Ms. Little's rebuttal time? Yourself. Ms. Little, you need to unmute. Okay. Am I unmuted now? Thank you. I'd like to respond to the incorrect suggestion that Karen Cook is Michelle Cochran's counsel here. She was local counsel for us because we work out of Washington, D.C. and any suggestion to the contrary in the briefing is inaccurate. As to the question of whether the administrative law should hear questions such as, did Michelle Cochran violate the securities laws? There's no question here that we're asking the court to decide that. That's the standard oil case, totally distinguishable and not relevant to anything the As far as the Five Circuit courts, it's interesting to me that Mr. Aguilar and the SEC seem to think that the two prongs of the Thunder Basin case have not been already decided. They have. Wholly collateral and outside agency competence or expertise is decided with finality by free enterprise fund. And what is interesting about the Five Circuit court cases is the first of them to come down, Bebo, concedes as much. And they said, but we think the meaningful judicial review is the more important rule. Although Thunder Basin does not say that, nor does any other Supreme Court case say that. Then Tilton comes along and it starts talking about standard oil, which is again inapposite. But why are we making such a big deal about all the cost and expense and years of delay? Again, that's an inapposite case. And I should also note that Tilton cites a learned hand as to why we should be concerned about it in a flip footnote. Then we get to Hill and Hill flips Thunder Basin and says that if the claim is of the type that Thunder Basin intended to exempt from district court jurisdiction, then the case gets dismissed. And that creates a presumption against jurisdiction, which is thoroughly contrary to the many precedents, whether it be Elrod or Matthews and various other cases we have cited to you that the district courts have unflagging duties to exercise jurisdiction. The last of the FCC ALJ cases, Bennett just throws free enterprise fund out the window and decides that all three factors preclude, despite the fact that under the very statute that they're construing, the Supreme Court has conclusively ruled that the two factors do not support preclusion of jurisdiction. This court should not follow that parade, which seems to shed aspects of Supreme Court rulings as it marches in the wrong direction. Ms. Little, let me ask you about, if I may, your assertion that free enterprise resolves the second Thunder Basin factor, which is the wholly collateral factor. In free enterprise, the removal claim, the double insulation claim was brought against the board, the PCAOB, the oversight board that Sarbanes-Oxley created. And that board acted, it could act outside enforcement proceedings. In fact, it did act outside enforcement proceedings in investigating the plaintiff free enterprise. So there was no enforcement proceeding. By definition, it was obvious it was collateral to any enforcement proceeding. Here, the claims against an ALJ who gets involved who has any effect on anyone only if you're in an enforcement proceeding. So why doesn't that distinguish free enterprise on part two of Thunder Basin? It makes it an even stronger case that this is wholly collateral because the very power of that ALJ to sit on Michelle's case is in question. It is not something that court, the administrative law judge is going to decide. They can't rule on their own qualifications to sit. They may do it, but as two commissioners of the SEC said in an administrative appeal, it's fine for the commission to opine on separation of powers, but that question has to be decided in the federal courts. And as far as sorting out other constitutional claims, I think the Thunder Basin factors do that well. I just want to, if you're going to move on, I just want to look back on my question, but you'll agree your client has no claim here unless the SEC had brought this enforcement proceeding and assigned the ALJ. Well, that's the posture in which it arose. Yes. And I think Mr. Aguilar conceded that should she just walk in without a pending proceeding, she would be struck down on ripeness. She'd be struck down on the final agency rule, which SEC and other agencies wield so successfully in the federal courts. So she would have no remedy, which places her far more in the situation of the plaintiffs of free enterprise fund than in some of the other cases we have been discussing today. As far as the ALJ... Can you respond to the availability of the mandamus argument that's been made? Well, my first response is that was brought up too late in the proceedings for the SEC to pursue that. There's nothing in any of the case law that I have researched in any of the circuits that require mandamus to be raised by mandamus. And as Judge Jones noted, that's not even a jurisdictional question. I did find a case that says that circuit courts can, in the appropriate situation, convert a claim to a mandamus claim if it decides it must be raised in that fashion. But again, there is simply no authority anywhere in the federal courts that suggests that the plaintiff has to raise this by mandamus to the circuit court. I want to just close by saying that under the decision below and the five circuits, Michelle Cochran must run through this administrative gauntlet before the very administrative law judge whose legitimacy is constitutionally defective before she could ever see a federal court. That result is disturbing and is illogical. But furthermore, it is not based on any statute divesting jurisdiction granted by Congress, but upon an implication drawn from the mere existence of the administrative scheme. That's an unthinkable state of affairs. It sets up respondents for repeated nightmares of endless trials that never end and the process becomes the punishment. We've got your argument. Thank you. Thank you. Thank you very much. Brief recess. The court will take a brief recess.